UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JAMES DAWAYNE MCDUFFY,<br>        Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | CAUSE NO.: 3:22-CV-688-JD-JEM |
| KNIGHLINGER,<br>        Defendant. | )<br>)<br>) | |

**FINDINGS, REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on an evidentiary hearing. On July 18, 2023, District Court Judge Jon E. DeGuilio referred this matter to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). ECF 33.

**I.      Background**

James Dawayne McDuffy, a prisoner without a lawyer, proceeds on an Eighth Amendment claim against Sergeant Lukas Neidlinger for failing to provide him with supplies to clean his cell on February 2, 2022. ECF 6. On February 17, 2023, the defendant moved for summary judgment, asserting the affirmative defense of failure to exhaust administrative remedies. ECF 17. On July 18, 2023, Judge Jon E. DeGuilio denied summary judgment based on a material dispute of fact. ECF 33.

More specifically, Judge DeGuilio found that McDuffy submitted a grievance, which the grievance office denied, and that McDuffy did not appeal the grievance. He concluded that there was a dispute as to whether McDuffy "made efforts to obtain an appeal form from the grievance office and was ignored." *Id.* This case was referred to the undersigned Magistrate Judge for an

1

evidentiary hearing to resolve this factual dispute pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), and the hearing was held on June 12 and July 16, 2024. *Id.*; ECF 92; ECF 108.

## II. Hearing Testimony

At the evidentiary hearing, the defendants submitted the Indiana Department of Correction's grievance policy. ECF 35-2. The grievance policy sets forth a three-step grievance process. *Id.* at 9-14. First, an inmate must file a grievance with the grievance specialist. *Id.* If an inmate is dissatisfied with the grievance specialist's determination on a grievance, he may file an appeal with the warden or his designee. *Id.* Finally, if an inmate is dissatisfied with the warden's determination, he may file an appeal with the department grievance manager. *Id.*

Michael Gapski testified that he has served at the grievance specialist at the Miami Correctional Facility since March 2021. He receives twenty to fifty grievance or grievance appeals each day. At the relevant times in 2022, his supervisor sparingly assisted him with his grievance processing duties, but he had no other assistance. Grievance responses were either delivered through caseworkers or through the evening mailbag. To receive a grievance appeal form from Gapski, inmates must indicate that they disagree with the response on the grievance response form and return it to Gapski within the five business days allotted for grievance appeals. Grievance appeal forms can also be requested by sending a pink Request for Interview form to Gapski. He has never knowingly failed to respond to a request for a grievance appeal form. He might withhold a grievance appeal form if a grievance appeal would be untimely but will also entertain requests for extensions. Requests for a grievance appeal form would be noted in the departmental database for inmate information. More recently, he has maintained a personal database, and he also maintains a hard copy filing system. Gapski also accepts grievance appeal forms that are obtained

from sources other than him.

On March 9, 2022, Gapski received a formal grievance from McDuffy dated February 2, 2022, regarding unsanitary health conditions. On April 5, 2022, Gapski sent McDuffy a grievance response form. Gapski did not receive the grievance response form, a request for a grievance appeal form, or a grievance appeal form from McDuffy in connection with this formal grievance. However, Gapski concedes that he has no personal knowledge regarding what might happen to such documentation before it is delivered to him.

Deputy Warden Jacqueline Scaife testified that she currently works at the Correctional Industrial Facility and vaguely recalls McDuffy from the Miami Correctional Facility. She reports that she recalls a conversation she had with McDuffy on May 2, 2022, based only on her review of an email. Specifically, on the morning of May 2, 2022, she used her cellphone to email Michael Gapski, "Have you received a grievance from him referencing hazmat cleaning a JHU?" That afternoon, Michael Gapski responded by email, "Yes. It is case number 139197 and it was answered 4/5/22." She does not recall whether McDuffy raised any concerns regarding a grievance appeal form but believes she would have distinguished between a grievance response and a grievance appeal form in the email she sent Gapski.

McDuffy testified that he arrived at the Miami Correctional Facility on October 14, 2021. He had transferred from the Wabash Valley Correctional Facility, where he had learned about the grievance procedure. Upon his arrival at the Miami Correctional Facility, he submitted ten to fifteen grievances regarding a number of issues, including food service and the handling of his legal mail, and he never received a response to these grievances.

According to McDuffy, on February 2, 2022, the defendant failed to provide him with

3

supplies to clean his cell. On February 3, 2022, he submitted a grievance regarding this issue by giving it to an officer. On February 8 and on March 4, 2022, McDuffy wrote to the ombudsman, complaining that facility staff did not respond to his grievance and did not provide him with grievance appeal forms. On April 5, 2022, Gapski sent him a grievance response, reporting that the defendant denied the grievance allegations. McDuffy marked that he disagreed, gave it to Counselor Salem Owens and requested a grievance appeal form. He also wrote to Gapski and asked for a grievance appeal form. During Officer Appreciation Week, on May 9 or May 10, 2022, he told Deputy Warden Scaife that he could not obtain a grievance form from Gapski. In McDuffy's presence, she emailed Gapski about McDuffy's request for an appeal form. On July 5, 2023, McDuffy wrote to the department's central office, complaining that Gapski ignored his grievances and requests for a grievance appeal form.

      Officer Mary Broomfield testified that she has worked as a correctional officer at the Miami Correctional Facility for five years. In May 2022, she had overheard the conversation between McDuffy and Deputy Warden Scaife and corroborated McDuffy's account. She specifically recalled that, during this conversation, McDuffy conveyed that he "did not have access to the appeal forms." Caseworker Tamara Sterling testified that, in 2023, she notarized a grievance for McDuffy and placed it in the grievance mailbox. She also made a note of the grievance in the computerized inmate management system, which was deleted under mysterious circumstances. Sergeant Deandra Baker also testified but could not recall any relevant information.

      Inmates Roman Jones, James Daher, and Martez Smith testified that they also had filed numerous grievances at the Miami Correctional Facility but have been repeatedly unable to obtain responses or grievance appeal forms from Gapski. They testified that they can obtain grievance

4

appeal forms only through Gapski and that Gapski will not accept grievance appeal forms obtained through other sources or without a grievance number, which is typically assigned by Gapski and placed on grievance response forms.

### III. Analysis

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). In other words, "a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.* at 1025. "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

Inmates are only required to exhaust administrative remedies that are available. *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears on paper but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered available. *Id.* In essence, "[p]rison officials may not

5

take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

To start, the Court observes that McDuffy initiated this lawsuit on August 19, 2022, just three months after the efforts to complete the grievance process detailed at the evidentiary hearing. ECF 1. There, he alleged as follow:

> Plaintiff [filed a] prompt grievance and requested a grievance appeal just as promptly from grievance specialist Michael Gapski. Michael Gapski never responded to Plaintiff's request. On May 9th or 10th, 2022, Plaintiff complained to Deputy Warden about the incident and the denial of due process by Gapski. In response, Scaife immediately emailed Gapski, telling him to supply Plaintiff with grievance appeal. Showing Plaintiff the email. Gapski never supplied said appeal form thus denying Plaintiff due process by hindering Plaintiff from exhausting his administrative remedies.

*Id.* at 4. At the summary judgment stage, in May 2023, McDuffy attested as follows:

> 22. Michael Gapski responded to my grievance. I check marked the section disagree and returned the form to Michael Gapski via institutional mail.
>
> 23. I never received an appeal form. Michael Gapski is in charge of distribution of such forms.
>
> 24. I wrote him a request for interview slip, copied it, and turned into institutional mail. He never responded.
>
> 25. On or about May 9th or 10th, 2022, I ran into Deputy Warden Scaife in the OSB building. I informed her of the ongoing situation and my numerous attempts to get an appeal form. She then emailed Michael Gapski and told him to forward me the form. She showed me the email. Michael Gapski still never sent the form.

ECF 28-1 at 3-4. As a summary judgment exhibit, he also attached a Request for Interview form, dated May 17, 2022, and addressed to Gapski, in which he recounted his interaction with Deputy Warden Scaife and noted that this represented his third request for an appeal grievance form. *Id.*

at 26.

> At his deposition on December 21, 2023, McDuffy testified as follows:
>
> **Q:** When you got this response, what did you do with it?
>
> **A:** I circled disagree. I personally handed it to then acting case manager Salem Owens. This is when I was in N Dorm, 217. I took it to her. We spoke about the incident, and then I took the grievance to her, handed it to her for her to give to Michael Gapski. That's the prison mail system. You give your legal stuff like that to the counselors or put it in the box or wherever, and it's their responsibility to disperse it to the various staff members it's direct to. So as far as the institutional mail, I gave it to my counselor.
>
> **Q:** And your counselor was Salem Owens, you said?
>
> **A:** Yes, sir.
>
> **Q:** This isn't the first grievance you've filed, right You've filed others; that's right?
>
> **A:** I've filed numerous grievances on my incarceration, but I've ended up being ignored.
>
> **Q:** Do you always give the grievances to your counselor? Or you mentioned something like sometimes you put them in a box. I mean, how do you usually send a response like when you get it, you sign it. How do you usually send it off.
>
> **A:** This is the only facility that have a grievance mailbox. So every other facility, you give your grievances to the counselor or put it in the mail bag, or the officer, they put it in the mailbag. . . . This grievance right here, the grievance appeal, I gave it to Ms. Salem Owens, as I recall. If I didn't put it in this box personally, I gave it to Salem Owens.
>
> **Q:** But you could have put it in the grievance box?
>
> **A:** Yeah, but I remember giving it to her, though. I think more along the lines I gave it to her. I remember having a conversation with her about this incident.

ECF 58 at 25-27. At his deposition, McDuffy also recounted his conversation with Deputy Warden Scaife and noted that Officer Broomfield had observed it. *Id.* at 28-31.

The Court finds that McDuffy has been generally consistent with respect to his efforts to

7

complete the grievance process since the outset of this case. He has repeatedly maintained that he promptly requested a grievance appeal form and that he followed up with Deputy Warden Scaife. Indeed, the record indicates that, if anything, McDuffy was unusually fixated on obtaining a grievance appeal form and adhering to the letter of the grievance process. The Court observes some inconsistency in McDuffy's narrative with respect to whether he first requested a grievance appeal form by submitting a request through the institutional mail or by handing a request to Counselor Owens, but this inconsistency appears to result from his use of imprecise language as a pro se prisoner and his understanding that he can access institutional mail through counselors. There was also some inconsistency with respect to Deputy Warden Scaife's email and McDuffy's account of his conversation with Deputy Warden Scaife. However, the email demonstrated that some grievance-related conversation had occurred. Furthermore, Officer Broomfield corroborated McDuffy's account that he had specifically complained about grievance appeal forms to Deputy Warden Scaife, and at the hearing Deputy Warden Scaife represented that she did not personally recall the exact contents of the conversation.

By contrast, no witness had any specific recollection that disputed McDuffy's representations of his efforts to obtain the grievance appeal form. According to the inmate witnesses, grievance appeal forms can be difficult for inmates to obtain. Gapski partially corroborated this through his testimony that he provides inmates grievance appeals only under certain circumstances and only during narrow timeframes. Furthermore, the inmate witness testimony indicates that grievances and related documents are not always received or processed by the grievance office as intended, whether due to a failure in the delivery process or otherwise. Based on the foregoing, the Court credits McDuffy's representations that he reasonably attempted

8

to request a grievance appeal form.

To the defendant's point, the record lacks sufficient evidence to find that Gapski or other correctional staff "ignored" McDuffy's requests for a grievance appeal form. But a grievance process can be rendered unavailable or "not capable of use" in more ways than one; unavailability does not require a finding of that correctional staff thwarted inmates "through machination, misrepresentation, or intimidation" but can also be demonstrated by showing that the grievance process is unreasonably difficult to navigate. *See Ross v. Blake*, 578 U.S. 632, 642–44 (2016). Accordingly, the Court finds here that the grievance process was rendered unavailable due to the inmate's limited access to grievance appeal forms and an imperfect institutional mail system.

### IV.     Conclusion

For these reasons, the Court:

(1) **DENIES as unnecessary** the motion to add rebuttal witnesses (ECF 111);

(2) **FINDS** that James McDuffy made reasonable efforts to obtain a grievance appeal form but that such forms were unavailable; and

(3) **RECOMMENDS** that this case proceed to discovery on the merits because James McDuffy did not fail to exhaust his available administrative remedies in violation of 42 U.S.C. § 1997e(a).

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(B). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar,*

*Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989).

  SO ORDERED this 29th day of August, 2024.

                s/ John E. Martin  
                MAGISTRATE JUDGE JOHN E. MARTIN  
                UNITED STATES DISTRICT COURT

cc: All counsel of record  
   Plaintiff, *pro se*