UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMES DAWAYNE MCDUFFY, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>KNIGHLINGER, )<br>    Defendant. ) | CAUSE NO.: 3:22-CV-688-JEM |

**OPINION AND ORDER**

James McDuffy, a prisoner without a lawyer, is proceeding in this case against Sgt. Lukas Neidlinger "in his individual capacity for compensatory and punitive damages for deliberate indifference to his safety on February 2, 2022, in violation of the Eighth Amendment." ECF 6 at 4. Specifically, McDuffy alleged in his complaint that he was placed in a cell that was covered in blood and when he asked Sgt. Neidlinger for assistance, Sgt. Neidlinger told him to clean the cell with a washcloth. *Id.* Sgt. Neidlinger filed a motion for summary judgment. ECF 190. With the motion, Sgt. Neidlinger provided McDuffy the notice required by Northern District of Indiana Local Rule 56-1(f). ECF 193. Attached to the notice were copies of Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1.

Pursuant to Local Rule 56-1(b), a party opposing a summary judgment motion must, within 28 days after the movant serves the motion, separately file (1) a response brief; and (2) a Response to Statement of Material Facts, which includes a citation to evidence supporting each dispute of fact. This deadline passed over a month ago, but McDuffy has not responded. Therefore, the Court will now rule on Sgt. Neidlinger's summary judgment motion.

1

The parties have filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

The Eighth Amendment requires that prison officials "must provide humane conditions of confinement . . . and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). In evaluating a conditions-of-confinement claim, the Court conducts an objective and subjective inquiry. *Id.* at 834. The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. On the subjective prong, the

prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Id.* As the Seventh Circuit Court of Appeals has explained, "[d]eliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "Negligence, or even objective recklessness, is insufficient to satisfy deliberate indifference." *Stockton*, 44 F.4th at 615. Thus, a prison official who takes "reasonable steps" to prevent harm to a prisoner is not liable for subsequent injuries, even if the official acted negligently or did not act as quickly as possible to abate all risks. *Bagola v. Kindt*, 131 F.3d 632, 647-48 (7th Cir. 1997); *see also Hunter v. Mueske*, 73 F.4th 561, 566 (7th Cir. 2023) ("So long as [prison officials] took measures reasonably calculated to address the risk [the inmate] faced, they cannot be held liable under § 1983, even though they ultimately failed to prevent his injury.").

Sgt. Neidlinger argues summary judgment is warranted in his favor because he was not deliberately indifferent to a serious risk of harm to McDuffy. Specifically, Sgt. Neidlinger provides evidence showing the following facts: On February 2, 2022, McDuffy returned to Miami Correctional Facility ("MCF") from court and was placed in cell JHU 309 for a mandatory quarantine period due to COVID-19 policies in place at the facility. ECF 176 at 6-8. A non-party correctional officer escorted McDuffy to this cell and told him that he would have to clean it. *Id.* at 10. According to McDuffy, the cell had "a lot of blood everywhere" including the sink, walls, door jam, and desk. ECF 58 at 10-11. McDuffy attempted to clean the cell with cleaning supplies

3

he got from the dayroom custodial closet, including a dustmop with only part of the dust rag on it, a mop with no mophead, and a few ounces of germicidal cleaning solution. ECF 176 at 12-13. McDuffy was able to use the clothing and bedding left by the cell's previous occupant to wipe up the blood in the cell and was able to use the cleaning solution to disinfect as best as he could. ECF 176 at 14, 32; ECF 178 at 4. McDuffy was then able to get rid of the clothing and bedding he used to clean up the blood by throwing them out of his cell through the cuff port. ECF 176 at 32.

The next morning, McDuffy began noticing blood he had not previously seen, for instance on the inside of the door frame. ECF 176 at 15-16. McDuffy called out to Sgt. Neidlinger as he passed by outside the cell and complained to him about the state of the cell. *Id.*; ECF 58 at 13. Specifically, McDuffy told Sgt. Neidlinger there was blood all over the wall and all over everything in the cell, and that he'd had to use clothes and blankets to clean up the blood. ECF 58 at 22. Sgt. Neidlinger looked into McDuffy's cell through the window but could not see any blood. ECF 184 at 39. Sgt. Neidlinger could see nearly the entire cell, except for the back of the cell door and a few small blind spots. *Id.* at 25, 31-33, 39. Sgt. Neidlinger could see most areas of the cell clearly, and could not see any observable blood. *Id.* at 37, 43, 70; ECF 157 at 4-5. Sgt. Neidlinger told McDuffy he could not see any blood in the cell, so McDuffy asked Sgt. Neidlinger to place him in handcuffs and remove him from the cell so that Sgt. Neidlinger could inspect the cell further. ECF 176 at 31. Because Sgt. Neidlinger could not see any blood in the cell, he believed it would be an unnecessary risk to extract McDuffy from the cell and leave him in the hallway while he went into the cell to inspect it, as cell extractions always pose a risk to officer safety and facility security. ECF 157 at 5-6. Instead, Sgt. Neidlinger left McDuffy in the cell and called "someone in

4

administration"[1] to see if Hazmat had cleaned the cell before McDuffy's arrival. ECF 157 at 5-6; ECF 184 at 49-51, 55-56. The person Sgt. Neidlinger spoke to confirmed that Hazmat had cleaned the cell prior to McDuffy being housed there. ECF 157 at 5-6; ECF 184 at 50, 56. This confirmed Sgt. Neidlinger's impression from viewing the cell that McDuffy's claims of there being blood all over the cell were not accurate. ECF 157 at 5-6. Sgt. Neidlinger then asked about getting more cleaning chemicals for McDuffy and was told that if there was no blood visible in the cell, they were not going to send any more chemicals down to the unit. ECF 184 at 49. At some point later, Sgt. Neidlinger spoke to Lt. Luckey and asked if McDuffy could get more chemicals and cleaning supplies and Lt. Luckey informed Sgt. Neidlinger that McDuffy could get more chemicals the following day when they were passed out in his unit. ECF 18-4 at 4; ECF 184 at 70. Because McDuffy did not respond to the summary judgment motion, the Court accepts these facts as undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . .").

In this case, no reasonable jury could conclude Sgt. Neidlinger was deliberately indifferent to McDuffy's health or safety, as the undisputed facts show Sgt. Neidlinger took reasonable steps to respond to McDuffy's complaints of unsanitary conditions in his cell. Specifically, it is undisputed Sgt. Neidlinger looked into McDuffy's cell and could not see any blood despite having a clear view of the cell. There is no evidence that it was unreasonable for Sgt. Neidlinger to decline McDuffy's request to remove him from the cell and inspect it further, as it is undisputed that Sgt. Neidlinger could see the cell clearly and he reasonably determined extracting McDuffy from the

---

[1] Sgt. Neidlinger could not remember who he spoke to in administration, but believed it might have been Lieutenant Luckey.

cell and leaving him in the hallway posed a safety risk. Moreover, it is undisputed that Sgt. Neidlinger took reasonable steps to respond to McDuffy's complaints by contacting someone in administration, ensuring Hazmat had cleaned the cell before placing McDuffy in the cell, and asking if McDuffy could receive additional cleaning supplies to help clean the cell. *See Hunter*, 73 F.4th at 566. While McDuffy believes Sgt. Neidlinger should have done more to help him clean the cell, the undisputed evidence shows that Sgt. Neidlinger took reasonable steps to respond to McDuffy's complaint and did not act with "a total unconcern" for his welfare. *See Stockton*, 44 F.4th at 615; *Perry v. Lott*, No. 3:22-CV-259-DRL, 2024 WL 3200776, at *3 (N.D. Ind. June 26, 2024) (holding that because lieutenant "took 'reasonable steps' within the scope of his authority to remedy" unsanitary conditions in the cellhouse, "no reasonable jury could conclude he was deliberately indifferent to the problem"). Accordingly, because it is undisputed Sgt. Neidlinger took reasonable steps to remedy McDuffy's complaint of unsanitary conditions in his cell, no reasonable jury could conclude Sgt. Neidlinger acted with deliberate indifference to McDuffy's welfare in the face of serious risks. Summary judgment is therefore warranted in favor of Sgt. Neidlinger on this claim.[2]

For these reasons, the Court **GRANTS** Sgt. Neidlinger's motion for summary judgment (ECF 190) and **DIRECTS** the clerk to enter judgment in favor of Sgt. Neidlinger and against James McDuffy and to close this case.

SO ORDERED this 24th day of July, 2025.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:    All counsel of record; Plaintiff, *pro se*

---

[2] Because no reasonable jury could conclude Sgt. Neidlinger acted with deliberate indifference to McDuffy's welfare, the Court does not reach Sgt. Neidlinger's alternative arguments that the conditions of McDuffy's cell were not objectively serious and that Sgt. Neidlinger is entitled to qualified immunity.